NO. 07-03-0052-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



APRIL 12, 2005



______________________________




JAMES JONGEBLOED, APPELLANT



V.



HORKEY OIL COMPANY, INC., APPELLEE




_________________________________



FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2001-512,745-A; HONORABLE MACKEY HANCOCK, JUDGE



_______________________________




Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.



MEMORANDUM OPINION 



 James Jongebloed challenges the trial court's judgment that Horkey Oil Company,
Inc. have and recover $515,887.31, plus interest and costs, based upon a written guaranty
agreement. By four issues, he questions whether (1) an entity that is no longer the holder
of the note, because it has indorsed, transferred possession, and irrevocably assigned
ownership of the note to another entity, can obtain a judgment against a guarantor of the
note for the amount due on the note, (2) the trial court abused its discretion by refusing to
amend the scheduling order, (3) the trial court abused its discretion by allowing an
improperly designated witness to testify about matters the court would not allow
Jongebloed to discover, and (4) the trial court abused its discretion by refusing to allow
Jongebloed's expert witness to testify. We affirm.

 Horkey sold some of its convenience stores in the Midland/Odessa area to Petro
Express, Ltd., a Texas limited partnership, upon Petro's execution and delivery of a
promissory note for $336,000 and another note for $400,000. In connection with the
acquisition by the limited partnership, William Bobbora, Richard Stinson, and Jongebloed
executed a written guaranty agreement dated February 8, 1999, by which each guaranteed
payment of the $400,000 note. In December 1999, Horkey transferred the $400,000 note
to Plains National Bank, with recourse and warranties to secure payment of a note of its
president, Joe R. Horkey, to the bank and also executed a commercial security agreement
covering the $400,000 as collateral for payment of its president's note to the bank. When
Petro defaulted on the $400,000 note, on February 14, 2001, Horkey sued Petro and
Bobbora, Stinson, and Jongebloed on their guaranties. After Horkey's claims against
Jongebloed were severed into the underlying cause, it filed its first amended petition
asserting claims against Jongebloed based on the written guaranty. (1) In response, by
supplemental answers, Jongebloed asserted (1) Horkey was not entitled to recover in the
capacity in which it sued, (2) a defect in parties and that Horkey was not a proper party, (3)
the contract was without consideration or had failed and Horkey was not the owner and
holder of the guaranty agreement, and (4) he did not sign the guaranty agreement. 

 Jongebloed's counsel announced that Jongebloed acknowledged he signed the
guaranty agreement. A jury trial was waived and the case was tried to the bench on
October 14, 1992. Upon conclusion of the trial, the trial court signed a judgment that
Horkey recover damages against Jongebloed based upon the guaranty agreement.

 By his first issue, Jongebloed contends that because Horkey had indorsed,
transferred possession, and irrevocably assigned ownership of the note to the bank, it could
not obtain a judgment against the guarantor of the note for the amount due thereunder. We
disagree.

 Because the trial court's findings of fact are not challenged, we will conduct our
review in the context of the findings and applicable law. See McGalliard v. Kuhlmann, 722
S.W.2d 694, 696 (Tex. 1986); Northwest Park Homeowners Ass'n, Inc. v. Brundrett, 970
S.W.2d 700, 704 (Tex.App.-Amarillo 1998, pet. denied). The copy of the note admitted
into evidence contained Horkey's transfer of the note "with recourse and warranties on
Horkey Oil Company, Inc." Among other things, the commercial security agreement 

 1. described the promissory note;

 2. granted the bank a security interest in the note;


 provided that Horkey "is and shall remain the sole owner of the
collateral;" and
 provided that the written security agreement represented the complete
and integrated understanding between the "Owner and Lender"
regarding the terms therein.



In addition to other findings, the trial court found:

 2. [o]n or about December 15, 1999, Horkey Oil Company, Inc. granted a
security interest in the Petro Express, Ltd. note to PNB Financial Bank. 
Horkey Oil Company, Inc. did not give PNB Financial Bank a security interest
in Defendant James Jongebloed's individual guaranty agreement.

 3. [t]he note was not conveyed to PNB Financial Bank and at all times
germane to this litigation Horkey Oil Company, Inc. was the party entitled to
pursue collection of the note and the individual guaranties.


Notwithstanding these findings, Jongebloed argues that Horkey could not proceed to
enforce payment of the guaranty. 

 A guaranty agreement is not a negotiable instrument and is not governed by the
provisions of section 3.102 of the Texas Business and Commerce Code. Vaughn v. DAP
Financial Services, Inc., 982 S.W.2d 1, 6 (Tex.App.--Houston [1st Dist.] 1997, no pet.) 
Further, by paragraph 4(b) of the guaranty, Jongebloed expressly agreed it would not be
necessary nor required that Horkey (holder) (2) 

 file suit or proceed to obtain or assert a claim for personal judgment against
any other party (whether maker, guarantor, endorser, or surety) liable for the
Obligations . . . .


 According to its terms, the guaranty was not a conditional guarantee or a guaranty
of collection, but instead, expressly provided that Jongebleod unconditionally guaranteed 
the prompt payment of the note at maturity. Texas case law recognizes that a transfer of
a guaranty can be implied upon an assignment of a promissory note or other obligation;
however, this is not true in every case. See Escalante v. Luckie, 77 S.W.3d 410, 419
(Tex.App.--Eastland 2002, pet. denied). Although the original of the promissory note had
been delivered to the bank together with the security agreement, the original of the
guaranty agreement remained in the file of Horkey's attorney. (3) In effect, Jongebloed
waived any requirement that Horkey exhaust its rights or take action against Petro as a
condition precedent to its action on the guaranty. Because the provision in the security
agreement that Horkey would remain the sole owner of the note (collateral) is sufficient
evidence to support findings of fact two and three, we are bound by them. 

 Moreover, Horkey's transfer of the note "with recourse" operated to obligate Horkey
to pay the bank in the event that Petro did not pay. See Tex Bus. & Com. Code Ann. § 
3.415(a) (Vernon 2002). Horkey's obligation to pay the note upon Petro's default in
payment of the note was absolute, not contingent. Hubacek v. Ennis State Bank, 159 Tex.
166, 317 S.W.2d 30, 33 (1958). Petro's default in the timely payment of the note matured
Horkey's absolute and non-contingent obligation to pay the note and provided Horkey the
additional ground to prosecute the action to enforce Jongebloed's unconditional guaranty
of prompt payment of the note. Accordingly, issue one is overruled.

 By his second issue, Jongebloed contends the trial court erred in denying his motion
to amend the scheduling order. We disagree. After suit was filed on February 14, 2001,
the trial court rendered a scheduling order on May 23, 2001, which set a discovery deadline
of April 29, 2002. The record does not show any effort by Jongebloed to examine or
discover the original promissory note except that after discovery had closed, he and
counsel for Horkey examined the original note at Plains National Bank. Then, on July 23,
2002, the trial court granted a continuance of the merits trial until October 14, 2002. After
a hearing, Jongebloed's emergency motion for a hearing on the scheduling order was
denied on September 9, 2002. (4)

 Rule 166 of the Texas Rules of Civil Procedure authorizes the trial court to make
orders to control proceedings and gives authority to modify an order to prevent manifest
injustice. Because the trial court has the duty "to schedule the cases in such a manner as
to expeditiously dispose of them" and is given wide discretion in managing the docket, an
appellate court will not interfere with the exercise of that discretion absent a showing of
clear abuse. Clanton v. Clark, 639 S.W.2d 929, 931 (Tex. 1982); Trevino v. Trevino, 64
S.W.3d 166, 170 (Tex.App.--San Antonio 2001, no pet.). Although Jongebloed learned
about the transfer of possession of the note to the bank on June 20, 2002, he did not
present his request to amend the discovery order for approximately ten weeks. We
conclude Jongebloed did not diligently pursue his efforts for discovery and thus, the trial
court did not abuse its discretion in denying the motion to amend the scheduling order. Hall
v. Rutherford, 911 S.W.2d 422, 427 (Tex.App.--San Antonio 1995, writ denied). 

 Moreover, a reporter's record of the hearing on September 9, 2002, was not
provided. Thus, we must presume the trial court did not abuse its discretion because the
claimed error has not been preserved by bill of exception. Tex. R. App. P. 33.1. See also
Hogan v. Credit Motors, Inc. , 827 S.W.2d 392, 393 (Tex.App.--San Antonio 1992), writ
denied, 841 S.W.2d 360 (1992) (per curiam). Issue two is overruled.

 Given our analysis and disposition of issues one and two and the fact that the
guaranty supporting the judgment is case specific, a discussion of the remaining points is
pretermitted. Tex. R. App. P. 47.1. See also Marantha Temple v. Enterprise Products, 833
S.W.2d 736, 742 (Tex.App.--Houston [1st Dist.] 1992, writ denied). (5) 

 Accordingly, the judgment of the trial court is affirmed.

 

 Per Curiam




Johnson, C.J., not participating.

 
1. At the time of the severance, Jongebloed's pleadings included a general denial and
affirmative defenses of breach of contract and fraud.
2. The guaranty expressly designated Horkey Oil Company, Inc. as the "holder."
3. Not trial counsel.
4. Jongebloed did not file his motion until September 6, 2002.
5. Moreover, even if the issues presented error, a question we do not decide, the
harmless error rule "applies to all errors in that it draws no distinction as to the type of
errors involved in its requirement for reversal." See Lorusso v. Members Mut. Ins. Co., 603
S.W.2d 818, 820 (Tex. 1980). 



en="false"
 UnhideWhenUsed="false" Name="Colorful Shading Accent 3"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-09-00206-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL B

 



SEPTEMBER
28, 2010

 



 

NICK LEE GRIEGO, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 242ND DISTRICT COURT OF HALE
COUNTY;

 

NO. B17934-0902; HONORABLE EDWARD LEE SELF, JUDGE



 



 

Before QUINN,
C.J., and CAMPBELL and HANCOCK, JJ.

 

 

ORDER

 

Appellant, Nick Lee Griego, has filed a motion in which he requests that this
Court set reasonable bail pending final disposition of his appeal.  We grant his motion.

            On
June 10, 2010, this Court issued its opinion concluding that there was legally
insufficient evidence to sustain appellants conviction for third-degree felony
evading arrest or detention using a vehicle and having been previously
convicted of evading arrest or detention[1]
and that there was factually insufficient evidence to sustain a state-jail
felony conviction for evading arrest or detention using a vehicle.[2]  We rendered a judgment of acquittal as to the
third-degree felony offense and remanded the cause
for a new trial on the charges of the state-jail felony offense of evading
arrest or detention using a vehicle.  See
Griego v. State, 07-09-00206-CR, 2010 Tex.App. LEXIS 4430 (Tex. App.Amarillo
June 10, 2010, no pet. h.).   We
overruled the States motion for rehearing on August 3, 2010.  Appellant filed in this Court his motion for
reasonable bail pending final determination of his appeal on September 3, 2010.  On September 8, 2010, the State filed, and
the Texas Court of Criminal Appeals granted, its motion for extension of time
in which to file its petition for discretionary review.

            We
are authorized to set bail upon request by an appellant in the following
circumstances:

If a conviction is reversed by a decision of a Court of Appeals, the
defendant, if in custody, is entitled to release on reasonable bail, regardless
of the length of term of imprisonment, pending final determination of an appeal
by the state or the defendant on a motion for discretionary review.  If the defendant requests bail before a
petition for discretionary review has been filed, the Court of Appeals shall
determine the amount of bail. If the defendant requests bail after a petition
for discretionary review has been filed, the Court of Criminal Appeals shall
determine the amount of bail.  The
sureties on the bail must be approved by the court where the trial was had.  The defendant's right to release under this
subsection attaches immediately on the issuance of the Court of Appeals' final
ruling as defined by Tex.Cr.App.R. 209(c).[3]

Tex.
Code Crim. Proc. Ann. art. 44.04(h) (Vernon
2006).  So, having reversed
appellants conviction and having been requested to set bail at a time prior to
the filing of a petition for discretionary review, we have authority to
consider appellants motion.

            Though
article 44.04(h) directs that the defendant be released on reasonable bail
under these circumstances, it does not specify the factors we are to consider
when determining the appropriate sum.  We
are not without guidance, however. 
Certain general rules govern the amount of bail to be required:

1. The bail shall be sufficiently high to give reasonable assurance
that the undertaking will be complied with.

2. The power to require bail is not to be so used as to make it an
instrument of oppression.

3. The nature of the offense and the circumstances under which it was
committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken
upon this point.

5. The future safety of a victim of the alleged offense and the
community shall be considered.

Tex.
Code Crim. Proc. Ann. art. 17.15 (Vernon
2005).  Consistent with article
17.15s general rules, the Texas Court of Criminal Appeals outlined more
specific factors to be taken into consideration when determining reasonable
bail: (1) the length of the sentence; (2) the nature of the offense; (3) work
history; (4) family and community ties; (5) length of residency; (6) ability to
make the bond; (7) criminal history; (8) conformity with previous bond
conditions; (9) existence of other outstanding bonds; and (10) aggravating
factors involved in the offense.  Ex parte Rubac, 611 S.W.2d 848,
84950 (Tex.Crim.App. 1981).  When, as here, the issue is reasonable bail
pending final determination of an appeal following a reversal by an appellate
court, the Fourteenth Court of Appeals outlined additional, perhaps even more
specifically-tailored, considerations: 
(1) the fact that the conviction has been overturned; (2) the States
ability (or inability) to retry the appellant; and (3) the likelihood that the
decision of the court of appeals will be overturned.  See Aviles v. State, 26 S.W.3d
696, 699 (Tex.App.Houston [14th Dist.] 2000, pet. refd).

            With
these several considerations in mind, we turn to appellants motion.  Appellants motion provides very little new
information that would aid in our determination.  He points out that he has been incarcerated
since June 2009 and represents that he is in poor health and in need of medical
care.  The record on direct appeal
provides us with additional information.

            From
the record, we observe that appellants criminal history is fairly
significant.  As an adult, appellant has
been charged with five offenses, ranging from the Class A misdemeanor of
resisting arrest to the third-degree felony offense of tampering with
evidence.  The other three offenses were
state-jail felonies.

            In
the instant case, appellant was originally charged with and convicted of
another third-degree felony, but, on direct appeal of that conviction, the
State conceded that its failure to introduce evidence of a prior evading arrest
or detention conviction at the guilt-innocence phase of trial rendered the
evidence legally insufficient to sustain a conviction for the third-degree
felony offense.[4]  See Tex.
Penal Code Ann. § 38.04(b)(2)(A).  The State urged us to find the evidence
sufficient to sustain a conviction on the state-jail felony offense of evading
arrest or detention using a motor vehicle. 
See Haynes v. State, 273 S.W.3d 183, 184 (Tex.Crim.App. 2008) (authorizing us to reform the judgment
to reflect that appellant was convicted of the state-jail felony if such
offense was included in the jury charge and if the evidence was sufficient to
support such conviction).  We found,
instead, that the evidence was factually insufficient to support a conviction
for the state-jail felony and remanded the cause for
a new trial.  New trial was to be had on
the state-jail felony allegations, not the third-degree felony charges.  Since the evidence was legally insufficient
to sustain the conviction for the third-degree felony offense, we rendered a
judgment of acquittal as to that offense. 
The State may not retry appellant for the third-degree felony
offense.  

            This
observation leads to other relevant considerations: the length of sentence and
the nature of the offense.  See Rubac, 611 S.W.2d at 849.  At a new trial on remand, the maximum grade
of offense for which appellant could be convicted is a state-jail felony,
meaning that the maximum term of imprisonment the base offense would carry is
two years in a state-jail facility.  See
Tex. Penal Code Ann. § 12.35(a) (Vernon Supp. 2010).  That is not to say, however, that the State
will be unable to enhance punishment for the state-jail felony by properly
employing any prior convictions. 
Nonetheless, we note that the appellant will be retried, if he is
retried, only on charges of a state-jail felony.  Not to minimize any attempt to avoid detention
by police, we also note the offense with which appellant was charged is a
nonviolent one.  Here, the State made no
allegation that appellant used his car as a deadly weapon.  Nor was there any evidence of reckless or
erratic driving.

            We
also consider appellants financial resources. 
See Rubac, 611
S.W.2d at 849.  In his affidavit
of financial status executed prior to trial, appellant represented that he had
a gross monthly income of $1,600.00 to $2,000.00 and monthly expenses ranging
from $1,095.00 to $1,195.00.  Appellant
was represented by appointed counsel both at trial and on appeal, suggesting
that he was indigent.  In his motion,
appellant maintains that he is without funds to post a significant bond.  Considering that appellant has been incarcerated
for well over a year, we presume that his financial status has not
improved.  

            Regarding
appellants ties to the community of Plainview, we learn very little from the
record.  Appellants brother is listed in
the clerks record as an emergency contact, and the brothers address is in
Plainview.  The record does indicate that
he has been in Hale County for a number of years.

            With
respect to the likelihood that the Texas Court of Criminal Appeals will reverse
our decision, we are respectfully hesitant to predict the high courts
disposition of a petition for discretionary review and will go only so far as
to say that we remain confident that our decision employed the proper standard
of review, that the evidence was factually insufficient to sustain a conviction
for the state-jail felony, and that our disposition of the case was correct
under the law.  We do note, however, that
decisions reversing a conviction on the basis of factual sufficiency may
sometimes be perceived as dwelling very closely to territory belonging to the
jury.

            Appellants
pretrial bail was originally set at $5,000.00 but, it having been determined
that such amount was insufficient, was increased to $10,000.00.  In his motion, he requests that this Court
set bail at $1,000.00.  Considering the
factors on which we have been provided information and endeavoring to strike a
balance between ensuring appellants presence and avoiding oppressive bail, we
GRANT appellants Motion for Reasonable Bail Pending Final Determination of
Appeal and set bail pending final determination of appeal at $2,500.00.  See Tex.
Code Crim. Proc. Ann. art.
44.04(h).

            IT
IS SO ORDERED.

                                                                                                Per
Curiam

Do not publish.   

            








 











[1]
See Tex.
Penal Code Ann. § 38.04(b)(2)(A) (Vernon Supp.
2010).





 

[2]
See
id. § 38.04(b)(1)(B).

 





[3]
As the Waco Court explained, the former Rule
209(c) of the Texas Rules of Post Trial and Appellate Procedure in Criminal
Cases provided:

 

As used in these rules, final ruling of the court
means (1) the 16th day after the date of the delivery of the court's opinion or
order where a motion for rehearing is permitted under Rule 208 but is not filed
or rehearing is not granted on the courts own motion, (2) the day after the
date of the overruling of a motion for rehearing where a further motion for
rehearing is not permitted under Rule 208, or (3) if a motion for rehearing
pursuant to Rule 208(d) is granted, the day after the date of the disposition
of the case on rehearing, whichever is later.

 

In re Keeter, 134 S.W.3d 250, 253 (Tex.App.Waco 2003, orig. proceeding).





[4]
With respect to the third-degree felony offense
of evading arrest or detention having previously been convicted of evading
arrest or detention, we reversed the judgment and rendered a judgment of
acquittal.  So, we may and do consider
that the State may not retry appellant for the third-degree felony offense.